1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11   AMOS G. SNELL,                         No. 2:13-cv-02178-MCE-DAD

12              Plaintiff,

13        v.                                **ORDER AND MEMORANDUM**

14   DEUTSCHE BANK NATIONAL TRUST
     COMPANY, et. al.,
15
              Defendant.
16

17

18        Through this action, Plaintiff Amos G. Snell ("Plaintiff") seeks relief from Deutsche

19   Bank National Trust Company ("Deutsche Bank"), as Trustee for GSAMP Trust 2005-

20   WMCI ("the Trust"); Ocwen Loan Servicing, LLC ("Ocwen"); Quality Loan Service

21   Corporation ("Quality Loan"); and Mortgage Electronic Registration Systems, Inc.

22   ("MERS") (collectively, "Defendants").  Specifically, Plaintiff alleges the following claims:

23   (1) Breach of Express Agreement; (2) Breach of Implied Agreement; (3) violations of the

24   Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; (4) violations of the Racketeer

25   Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (5) violations of

26   the Fair Debt Collection Practices Act ("FDCPA"),15 U.S.C. § 1692; (6) violations of

27   California Civil Business and Professions Code 17200 ("the Unfair Business Practices

28   Act"); (7) Slander of Title; and (8) Wrongful Foreclosure.  Complaint, Oct. 18, 2013, ECF

1

No. 1.  On Nov. 12, 2013, Defendants Deutsche Bank, MERS, and Ocwen filed an

Answer.  Answer, Nov. 12, 2013, ECF No. 6.  Presently before the Court is Defendant

Quality Loan's Motion to Dismiss for failure to state a claim upon which relief can be

granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Mot., Nov. 13, 2013, ECF

No. 7.  Plaintiff filed a timely opposition.  Opp'n, Dec. 5, 2013, ECF No. 9.[2]  For the

reasons set forth below, Defendant Quality Loan's Motion, ECF No. 7, is GRANTED with

leave to amend.[3]

# BACKGROUND[4]

On June 14, 2005, Plaintiff obtained a loan and recorded a Deed of Trust against

the real property located at 2808 Olivewood Lane in Vallejo, California ("Subject

Property").  According to Plaintiff, WMC Mortgage Corp. ("WMC") was the original lender

and MERS was named as the beneficiary.  In 2007, WMC ceased doing business.

In April 2008, Quality Loan, as an agent of Deutsche Bank, Trustee for the Trust,

recorded a Notice of Default beginning the foreclosure process.  Plaintiff objects to this

action because although Quality Loan recorded the Notice of Default in April 2008,

Deutsche Bank did not file a Substitution of Trustee naming Quality Loan Service as

Trustee until the following month.

---

[1]All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2]Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g). Therefore, Plaintiff's request for Telephonic Appearance, Request, Dec. 12, 2013, ECF No. 14, is DENIED as moot.

[3] Because the other Defendants in this action, Deutsche Bank, MERS, and Ocwen filed an Answer to Plaintiff's Complaint, ECF No. 6, the Court does not address whether of the arguments made in Quality Loan's Motion may apply equally to all Defendants, as the Court may only *sua sponte* dismiss those Defendants who have not appeared and challenged the pleadings.  See Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008).  Through their Answer, Defendants Deutsche Bank, MERS, and Ocwen appeared in this action.  None of these Defendants joined Quality Loan's Motion.  Therefore, through this Order, the Court only dismisses Plaintiff's claims against Defendant Quality Loan.

[4]The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  See Compl., Nov. 18, 2013, ECF No. 1.

1  On May 12, 2008, an Assignment of Deed of Trust was recorded in which MERS

2  conveyed the beneficial interest in Plaintiff's Deed of Trust to Deutsche Bank, as Trustee

3  for the Trust.  This assignment of all beneficial interest to Deutsche Bank as Trustee was

4  done pursuant to a Pooling and Servicing Agreement ("PSA") dated as of September 1,

5  2005.  On May 21, 2008, Deutsche Bank filed a Substitution of Trustee naming Quality

6  Loan as Trustee.

7  The gravamen of Plaintiff's Complaint is that Defendants failed to comply with the

8  terms of the PSA for the trust into which Plaintiff's note was transferred.   Specifically,

9  Plaintiff alleges that a "consequence of late-recording [the Assignment of Deed of Trust]

10  is that all those loans are not assets of the Trust, including Plaintiff's Deed of Trust."

11  Compl. ¶ 59.  Therefore, Plaintiff asserts that the foreclosure of Plaintiff's property was

12  wrongful.

13  Subsequently, between October 31, 2008, and February 15, 2012, five notices of

14  Trustee's Sale were recorded in the Solano County Recorder's Office.  The Subject

15  Property was sold in October 2012 and Quality Loan Service filed a Trustee's Deed

16  Upon Sale conveying title of the property to Deutsche Bank, as Trustee, for the Trust.

17  On April 11, 2013, a Grant Deed was recorded which purported to convey title from

18  Deutsche Bank to Next Generation Capital, LLC.

19  Based on the above facts, on October 18, 2013, Plaintiff filed a Complaint alleging

20  violations of federal and state law.  See ECF No. 1.  On November 13, 2013, Defendant

21  Quality Loan filed a motion to dismiss. Mot., Nov. 13, 2013, ECF No. 7.  Defendant

22  Quality Loan also filed a request for judicial notice in support of its motion to dismiss.

23  Request, Nov. 13, 2013, ECF No. 8.[5]

24  ───────────────
[5] Defendant Quality Loan filed a Request for Judicial Notice of fifteen publicly recorded or filed

25  documents related to the non-judicial foreclosure process on the Subject Property and court dockets
related showing Plaintiff's bankrupty filings.  See ECF No. 7-2 (exhibits A through O).  Exhibits A through

26  G and L are records of the Solano County Recorder.  Exhibits H through K and M through O are copies of
the dockets of Plaintiff's bankruptcy filings.  Plaintiff opposes the motion to the extent that it asks the Court

27  to accept the contents of the documents as true. Objections, Dec. 5, 2013, ECF No. 10.  The documents
submitted by Quality Loan for Judicial Notice are not relevant to this Court's determination of whether or

28  not Quality Loan's Motion to Dismiss under Rule 12(b)(6) is proper and accordingly, Defendant's request
for judicial notice is DENIED as moot.

3

1

2

**STANDARD**

3        On a motion to dismiss for failure to state a claim under Federal Rule of Civil

4 Procedure 12(b)(6), all allegations of material fact must be accepted as true and

5 construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

6 Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

7 statement of the claim showing that the pleader is entitled to relief" in order to "give the

8 defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

9 Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

10 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

11 detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

12 his entitlement to relief requires more than labels and conclusions, and a formulaic

13 recitation of the elements of a cause of action will not do."  Id. (internal citations and

14 quotations omitted).  A court is not required to accept as true a "legal conclusion

15 couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

16 (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

17 right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

18 Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

19 (stating that the pleading must contain something more than "a statement of facts that

20 merely creates a suspicion [of] a legally cognizable right of action.")).

21        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

22 assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

23 quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

24 to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

25 the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

26 Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

27 facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

28 have not nudged their claims across the line from conceivable to plausible, their

4

1 complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed

2 even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

3 recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

4 232, 236 (1974)).

5       A court granting a motion to dismiss a complaint must then decide whether to

6 grant leave to amend.  Leave to amend should be "freely given" where there is no

7 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

8 to the opposing party by virtue of allowance of the amendment, [or] futility of the

9 amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

10 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

11 be considered when deciding whether to grant leave to amend).  Not all of these factors

12 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

13 carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

14 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

15 "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

16 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

17 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

18 1989) ("Leave need not be granted where the amendment of the complaint . . .

19 constitutes an exercise in futility . . . .")).

20

21 **ANALYSIS**

22

23       Plaintiff alleges three claims based on federal law; the remaining five claims are

24 based on state law.  See Compl.  Defendant Quality Loan moves to dismiss all of

25 Plaintiff's claims against it under Rule 12(b)(6) because the Complaint "contains nothing

26 more than legal conclusions that are unsupported factually and each claim fails to plead

27 the necessary elements to establish each asserted cause of action."  Mot. at 2.  Each of

28 Plaintiff's claims are discussed in turn, below.

## A.    Wrongful Foreclosure

Plaintiff contends that Defendants lacked the legal power to foreclose the Subject Property.  Plaintiff contends that "[i]f Defendants are permitted to rely on the invalid Assignment of Deed of Trust, Substitution of Trustee, and Trustee's Deep Upon Sale to remove Plaintiff from possession, Plaintiff will wrongfully lose his home."  Compl. ¶ 49. Plaintiff's claim arises from its contention that the Notice of Default, Notice of Sale, and Assignment were all wrongful because "the purported foreclosing beneficiary, Defendant Deutsche Bank, was not the *true* beneficiary at the time of the Trustee's sale on October 17, 2012 or [at the time of] the issuance of Trustee's Deed of Sale on October 24, 2012." Compl. ¶ 41.  Plaintiff also alleges that Quality Loan was not the "true Trustee under the Deed of Trust."  Id. ¶ 44.  Specifically, Plaintiff contends that the Assignment to Defendant Deutsche Bank is invalid and that Quality Loan therefore lacked the authority to commence the foreclosure on behalf of Deutsche Bank.

Under California law,  "[t]he elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering."  Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (2011).  "Justifications for setting aside a trustee's sale . . . which satisfy the first element, include the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale."  Id. at 104.  "Other grounds include proof that: (1) the trustee did not have the power to foreclose, (2) the trustor was not in default, no breach had occurred, or the lender had waived the breach, or (3) the deed of trust was void."  Id.

Plaintiff bases his wrongful foreclosure claim on the late transfer to the trust on the grounds that it violated the PSA for the Trust.  Plaintiff argues that because of the

1  wrongful late transfer to the trust, Defendants relied on the invalid Assignment of Deed

2  of Trust, Substitution of Trustee, and Trustee's Deep Upon Sale to remove Plaintiff from

3  possession.  In response, Defendant Quality Loan asserts that Plaintiff lacks standing to

4  challenge any alleged violations of the PSA.

5       Plaintiff urges this Court to impose a literal interpretation of New York Trust Law

6  Estates, Powers and Trusts § 7-2.4 which was relied upon in Glaski v. Bank of America,

7  218 Cal. App. 4th 1079 (2013), and find that acts in contravention of a trust are void and

8  not merely voidable.  Plaintiff further asserts that the late assignment should be

9  considered void instead of voidable under the ultra vires doctrine imposed on borrowers.

10  To support these contentions, Plaintiff relies heavily on Glaski, which recently held that a

11  borrower has standing to challenge the assignment of a loan to a securitized trust, even

12  if the borrower was not a party to or a beneficiary of the assignment agreement.  See

13  218 Cal. App. 4th at 1094-96.

14       However, in direct conflict with Glaski, a different California Court of Appeal held

15  that as "an unrelated third party to the alleged securitization, and any other subsequent

16  transfers of the beneficial interest under [a] promissory note, [a plaintiff] lacks standing to

17  enforce any agreements, including the investment trust's pooling and servicing

18  agreement, relating to such transactions.  Furthermore, even if any subsequent transfers

19  of the promissory note were invalid, [plaintiff] is not the victim of such invalid transfers

20  because [his] obligations under the note remained unchanged."  Jenkins v. JP Morgan

21  Chase Bank, N.A., 216 Cal. App. 4th 497, 515 (2013).  Thus, under Jenkins, Plaintiff

22  would not have standing to challenge the assignment agreement because he did not

23  allege that he was a party to or a beneficiary of the agreement.

24       Although the Glaski court noted its disagreement with courts that have come to an

25  opposite conclusion regarding the question of standing, as Quality Loan notes in its

26  briefing, the Glaski court did not mention or distinguish Jenkins.  See generally 218 Cal.

27  App. 4th 1079.  Defendant Quality Loan urges this Court to follow the Jenkins decision

28  and find that Plaintiff lacks standing to challenge the securitization of his loan.

7

1    Numerous courts have subsequently expressed their disagreement with <u>Glaski</u>

2    and have continued to follow the <u>Jenkins</u> approach.  In <u>Newman v. Bank of New York</u>

3    <u>Mellon</u>, 1:12-CV-1629 AWI, 2013 WL 5603316 at *3 n.2 (E.D. Cal. Oct. 11, 2013), the

4    court noted that "no courts have yet followed <u>Glaski</u> and <u>Glaski</u> is in a clear minority on

5    the issue.  Until either the California Supreme Court, the Ninth Circuit, or other appellate

6    courts follow <u>Glaski</u>, this Court will continue to follow the majority rule."  Thus, the court

7    concluded that "[a]ny claims that are based on violation of the PSA are not viable."  <u>Id.</u> at

8    *3 (citing pre-<u>Glaski</u> authority including <u>Jenkins</u>).

9    Another district court recently noted that "the majority of courts, including many

10   judges in this district and circuit, as well as other California courts, have disagreed with

11   [the <u>Glaski</u>] decision and its conclusion."  <u>Maxwell v. Deutsche Bank Nat'l Trust Co.</u>,

12   13CV03957WHOWHO, 2013 WL 6072109 at *2 (N.D. Cal. Nov. 18, 2013) (citing

13   <u>Dahnken v. Wells Fargo Bank, N.A.</u>, No. 13–cv–2838–PJH, 2013 WL 5979356, at * 2

14   (N.D. Cal. Nov. 8, 2013); <u>Almutarreb v. Bank of New York Trust Co.</u>, No. 12–cv–3061–

15   EMC, 2012 WL 4371410 (N.D.Cal. Sept. 24, 2012)); <u>Subramani v. Wells Fargo Bank</u>

16   <u>N.A.</u>, No. 13–cv–1605–SC, 2013 WL 5913789 at *3 (N.D. Cal. Oct. 31, 2013) (rejecting

17   <u>Glaski</u> and holding that plaintiffs who are not parties to PSAs lack standing to challenge

18   that aspect of the securitization process's validity).

19   This Court adopts the majority position that "plaintiffs lack standing to challenge

20   noncompliance with a PSA in securitization unless they are parties to the PSA or third

21   party beneficiaries of the PSA."  <u>Dahnken</u>, 2013 WL 5979356 at *2 (internal citations

22   omitted).  Until either the California Supreme Court, the Ninth Circuit, or other appellate

23   courts follow <u>Glaski</u> or address the discrepancy between <u>Glaski</u> and <u>Jenkins</u>, this Court

24   will continue to follow the <u>Jenkins</u> rule.  Therefore, Plaintiff's claims based on alleged

25   violation of the PSA are not viable.  <u>See e.g.</u>, <u>Newman</u>, 2013 WL 5603316 at *3.

26   Moreover, Plaintiff does not allege that he is a party to the PSA.  <u>See</u> <u>Phong Tran v.</u>

27   <u>Bank of America, N.A.</u>, No. 12–4507 PSG, 2013 WL 2368048 at *2–3 (N.D.Cal. May 29,

28   2013) (dismissing Plaintiff's breach of PSA claims without leave to amend because

Plaintiff did not allege that he is a party to the PSA, only that he was harmed by Defendants' alleged violation of the PSA).

Because Plaintiff does not have standing to challenge Defendant Quality Loan's alleged noncompliance with the PSA, Plaintiff's claim against Quality Loan for wrongful foreclosure is DISMISSED without prejudice.[6]

**B.     Breach of Express Agreement and Breach of Implied Agreement**

Plaintiff's Third and Fourth Causes of Action for breach of express agreement and breach of implied agreement against Quality Loans fail because they are similarly premised on and derived from the alleged late transfer to the trust in violation of the PSA.  See Compl., ¶ 51 (alleging that "Plaintiff was damaged as a direct and proximate result of [Quality Loan Service's breach] of the Deed of Trust and [PSA]"); see also Opp'n, at 18 (claiming that "Defendants are also in breach of the [PSA] for the securitized trust").  Plaintiff's allegations for breach of implied agreement also appear to be restated claims for breach of PSAs. See Compl., ¶¶ 68-72.  As discussed above, Plaintiff's claims based on alleged violation of the PSA are not viable.

Moreover, to state a cause of action for breach of contract against Quality Loan specifically, Plaintiff must allege the existence of a contractual relationship between Plaintiff and Quality Loan that was breached.  See, e.g., Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012) (internal citations omitted) ("To be entitled to damages for breach of contract, a plaintiff must plead and prove the following elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff.").  Plaintiff's allegations are merely "legal conclusion[s] couched as . . . factual allegation[s]."  Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 555). Plaintiff's

---

[6]In addition, the Court notes that, in this case, unlike Glaski, where the court applied a New York Statute, Plaintiff does not argue that New York law applies.  See Glaski, 218 Cal. App. 4th at 1097 (noting that it "read the New York statute literally").  Although Plaintiff states in his Opposition that he "has alleged, or may amend to do so if leave is granted that the trust here was created under New York Trust Law", Opp'n at 16, Plaintiff's Complaint does not allege that the trust was created under New York Trust Law or assert that New York Trust Law should govern.  Further, Plaintiff admits that he "does not yet have a copy" of the PSA. See id. at 18.

1   allegations do not "raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S.

2   at 555.  Further, Plaintiff fails to sufficiently allege that he has performed his obligations

3   under the Deed of Trust or that he is excused from doing so.  Specifically, Plaintiff failed

4   to plead that he is not in default on his loan.  <u>See, e.g.</u>, Compl. at 13; Opp'n at 18

5   (arguing that "due to the break in the chain of title, Plaintiff was never in default *to the*

6   true beneficial interest holder") (emphasis added); <u>Patel v. Mortgage Elec. Registration</u>

7   <u>Sys., Inc.</u>, 4:13-CV-1874 KAW, 2013 WL 4029277 at *5 (N.D. Cal. Aug. 6, 2013) (noting

8   that "[t]o state a claim for breach of contract, Plaintiffs must also show that they

9   performed or were excused from performing their obligations under the contract").

10          Thus, Plaintiff's claims against Quality Loan for breach of express agreement and

11   breach of implied agreement are thus DISMISSED without prejudice.

12          **C.      Slander of Title**

13          Plaintiff alleges that Quality Loan is liable for slander of title.  Specifically, Plaintiff

14   alleges that Quality Loan's "recording of [Notices of Trustee's sale, Notices of Default,

15   and Substitution of Trustees] was false, knowingly wrongful, without justification, in

16   violation of statute, unprivileged, and caused doubt to be placed on Plaintiff's title to the

17   property."  Compl. ¶ 34.  Plaintiff alleges that Quality Loan knew its filings were false

18   because the documents were not filed in a timely manner and therefore were not legally

19   valid.  <u>See, e.g.</u>, <u>id.</u> ¶ 21-25.

20          "Slander of title is a tortious injury to property resulting from unprivileged, false,

21   malicious publication of disparaging statements regarding the title to property owned by

22   plaintiff, to plaintiff's damage."  <u>Southcott v. Pioneer Title Co.</u>, 203 Cal. App. 2d 673, 676

23   (1962).

24                  Slander or disparagement of title occurs when a person,
                    without a privilege to do so, publishes a false statement that
25                  disparages title to property and causes the owner thereof
                    some special pecuniary loss or damage.  The elements of the
26                  tort are (1) a publication, (2) without privilege or justification,
                    (3) falsity, and (4) direct pecuniary loss.  If the publication is
27                  reasonably understood to cast doubt upon the existence or
                    extent of another's interest in land, it is disparaging to the
28                  latter's title.  The main thrust of the cause of action is

                                           10

1
2
> protection from injury to the salability of property, which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value.

3  Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC, 205 Cal. App. 4th 999,

4  1030 (2012), as modified on denial of reh'g (May 30, 2012), review denied (July 18,

5  2012) (internal citations omitted).

6         With respect to Quality Loan, Plaintiff alleges that Quality Loan is liable based on

7  the recording of three false documents: a Notice of Default, a Substitution of Trustee, a

8  Notice of Sale.  See Compl. ¶ ¶ 25, 29, 30.  Defendant Quality Loan asserts that the

9  litigation privilege protects its conduct, and therefore Plaintiff cannot state a prima facie

10 claim for slander of title.  Quality Loan also asserts that Plaintiff failed to plead the

11 necessary elements to establish slander of title.  See Mot. at 4, 7-8, 11-13.

12        Quality Loan is correct that California's "statutory nonjudicial foreclosure

13 procedures are privileged communications" and are therefore included within the so-

14 called "litigation privilege."  Kachlon v. Markowitz, 168 Cal. App. 4th 316, 335 (2008)

15 (referring to the procedures for nonjudicial foreclosures as codified in California Civil

16 Code section 2920 through 2933.5 and referring to section 2924 which notes that "[t]he

17 mailing, publication, and delivery of notices as required by this section . . . shall

18 constitute privileged communications pursuant to Section 47"); see Cal. Civ. Code

19 § 2924.  However, Quality Loan suggests that nonjudicial foreclosure proceedings are

20 protected by an absolute privilege rather than a qualified privilege, and cites to Kachlon

21 for the proposition that the only exception is based on the tort of malicious prosecution.

22 See Mot. at 13 (citing Kachlon, 168 Cal. App. 4th at 336).

23        Defendant is incorrect.  After a long discussion, Kachlon concludes that "the

24 protection granted to nonjudicial foreclosure by the 1996 amendment is the qualified

25 common interest privilege of section 47, subdivision (c)(1)."  168 Cal. App. 4th at 341;

26 see Permito v. Wells Fargo Bank, N.A., C-12-00545 YGR, 2012 WL 1380322 at *8 (N.D.

27 Cal. Apr. 20, 2012) ("Absent factual allegations of malice, a trustee's performance of the

28 statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-

1   interest privilege of California Civil Code § 47(c)(1).").  "Any statutorily required mailings,

2   publication, and delivery of notices in connection with a non-judicial foreclosure, and the

3   performance of any statutory procedures by a trustee and beneficiary, are privileged

4   communications under the qualified, common-interest privilege of [California Civil Code]

5   Section 47, subdivision (c)(1)."  Ismail v. Wells Fargo Bank, N.A., 2:12-CV-01653-MCE,

6   2013 WL 930611 (E.D. Cal. Mar. 8, 2013) on reconsideration, 2:12-CV-01653-MCE-CK,

7   2013 WL 4516122 (E.D. Cal. Aug. 23, 2013) (citing Kachlon, 168 Cal.App.4th at 333).

8   As such, Defendant is protected by a qualified privilege when it publishes and delivers

9   any notices in the foreclosure of a property, and in performing any statutory foreclosure

10  procedures.

11          To qualify for the common interest privilege, a communication must be made

12  "without malice, to a person interested therein, . . .  by one who is also interested." Cal.

13  Civ. Code § 47(c).  "For this purpose, malice is defined as actual malice, meaning that

14  the publication was motivated by hatred or ill will towards the plaintiff or by a showing

15  that the defendant lacked reasonable grounds for belief in the truth of the publication and

16  therefore acted in reckless disregard of the plaintiff's rights."  Kachlon, 168 Cal. App. 4th

17  at 336 (internal citations omitted).

18          Here, Plaintiff attempts to allege that Defendant Quality Loan acted with malice.

19  For example, in his Complaint, Plaintiff states: "Defendant Quality Loan therefore acted

20  with malice and a disregard for the truth when it filed the Notice of Default, despite

21  knowing no entity was validly the beneficiary at the time of the Notice of Default."

22  Compl. ¶ 25.  Plaintiff also alleges that "Defendant Quality Loan Service acted with

23  malice and a reckless disregard for the truth by recording five Notices of Trustee's Sale

24  when it knowingly did not have the requisite legal authority to notice a valid trustee's

25  sale."  Id. ¶ 31.  Malice requires "that 'the publication was motivated by hatred or ill will

26  towards the plaintiff or by showing that the defendant lacked reasonable grounds for

27  belief in the truth of the publication and therefore acted in reckless disregard of the

28  plaintiff's rights.'"  Kachlon, 168 Cal. App. 4th at 336 (citing Sanborn v. Chronicle Pub.

1   Co., 18 Cal. 3d 406, 413 (1976)).  Plaintiff's Opposition further explains that "Defendants

2   Quality and Ocwen . . . acted with malice by relying on the false Substitution of Trustee,

3   to record the false Notice of Trustee's Sale."  Opp'n at 11.

4          However, Plaintiff's allegations are merely "legal conclusion[s] couched as . . .

5   factual allegation[s]."  Iqbal, 129 S. Ct. at 1950 (quoting Twombly, 550 U.S. at 555).

6   Plaintiff's allegations do not "raise a right to relief above the speculative level."  Twombly,

7   550 U.S. at 555.  For example, Plaintiff does not allege how Quality Loan "knowingly did

8   not have the requisite legal authority to notice a valid trustee's sale" and therefore lacked

9   reasonable grounds for belief in the truth of the publication.  Moreover, Plaintiff fails to

10  allege sufficient facts to show that Quality Loan specifically, as opposed to the other

11  Defendants, knew that the Substitution of Trustee was false.  Therefore, Plaintiff's

12  allegations are insufficient "to demonstrate that [Quality Loan] did not have a qualified

13  privilege to" file Notices of Default.  Ismail v. Wells Fargo Bank, N.A., No. 2:12-cv-01653-

14  MCE-CKD, 2013 WL 930611 at *7 (E.D. Cal. Mar. 8, 2013); cf. Albano v. Cal-W.

15  Reconveyance Corp., 4:12-CV-4018 KAW, 2012 WL 5389922 at *9 (N.D. Cal. Nov. 5,

16  2012)  (holding that an allegation that the recording of a notice of default was sufficient

17  to defeat the motion to dismiss because the plaintiff pled in detail and with specificity that

18  defendants fraudulently created the necessary documents).  Therefore, Plaintiff has

19  failed to demonstrate that Defendant Quality Loan did not have a qualified privilege to

20  publish and deliver foreclosure notices.

21         In addition, to the extent Plaintiff's slander of title claim against Quality Loan is

22  based on and derived from the theory that Defendants lacked authority under the deed

23  of trust because of PSA violations, their claim fails for the reasons described above.  See

24  Ogilvie v. Select Portfolio Servicing, 12-CV-001654-DMR, 2012 WL 4891583 at *4 (N.D.

25  Cal. Oct. 12, 2012) (rejecting a plaintiff's slander of title claim to the extent that it was

26  based on the theory that the defendants allegedly failed to comply with the terms of the

27  PSA).[7]
    _____

28          [7]Further, the Court notes that Plaintiff does not appear to contest that he was in default or that his

1    Therefore, Plaintiff's claims against Quality Loan for slander of title are

2  DISMISSED without prejudice.

3    **D.    TILA**

4    Plaintiff alleges that Defendant Quality Loan violated TILA by failing to provide

5  Plaintiff with accurate material disclosures.  Specifically, Plaintiff alleges that Defendants

6  failed to comply with the "Liability of Assignee" section of TILA which requires that when

7  an entity purchases or is assigned the beneficial interest in a loan on a property, it must

8  notify the borrower in writing within thirty days of when the loan is transferred. See

9  Compl. at 20-23.  In response, Defendant Quality Loan contends that a Trustee such as

10  itself has no beneficial interest in the Deed of Trust.  Mot. at 18.  Plaintiff acknowledges

11  that "[a]lthough Quality Loan Services, as alleged Trustee, would generally not be

12  subjected to TILA, under California law . . . Plaintiff alleges upon information and belief

13  that Quality Loan Services is a party in privity to the [PSA] under the law of agency" and

14  can therefore be held liable.  Compl. ¶ 87.

15    Under California law, the trustee of a deed of trust has no beneficial interest in the

16  mortgage associated with the deed of trust.  Heritage Oaks Partners v. First Am. Title

17  Ins. Co., 155 Cal. App.4th 339, 345 (2007).

18
19
>           The trustee under a deed of trust is not a true trustee, and
>           owes no fiduciary obligations; [it] merely acts as a common
>           agent for the trustor and beneficiary of the deed of trust. [The

20

21  property was being foreclosed at the time that Defendant Quality Loan filed the Notices of Default.  Plaintiff
only contests the circumstances surrounding his default.  See, e.g., Compl. at 13; Opp'n at 18 (arguing
that "due to the break in the chain of title, Plaintiff was never in default to the true beneficial interest
22  holder").  Thus, even if the Notice of Default, Notice of Sale, and Substitution of Trustee contained false or
mistaken information, as alleged by Plaintiff, the recordation of these documents could not have damaged
the Plaintiff.  See Ismail v. Wells Fargo Bank, N.A., 2:12-CV-01653-MCE, 2013 WL 930611 at *7 (E.D.
23  Cal. Mar. 8, 2013) on reconsideration, 2:12-CV-01653-MCE-CK, 2013 WL 4516122 (E.D. Cal. Aug. 23,
2013) ("Additionally, Plaintiffs are in default under the Deed of Trust. . . . Even if the Notice of Default and
24  Notice of Sale contained false or mistaken information concerning the identity of the beneficiary, the
recordation of these documents could not have damaged the Plaintiffs."); see e.g., Sexton v. IndyMac
25  Bank FSB, No. 3:11–cv–437, 2011 WL 4809640, at *5 (D.Nev. Oct. 7, 2011); Ramos v. Mortg. Elec.
Registrations Sys., Inc., No. 2:08–CV–1089, 2009 WL 5651132, at *4 (D.Nev. Mar. 5, 2009) (dismissing
26  slander of title claim where Plaintiffs failed to dispute that they were in default on their loan, nor was it false
that the property was to be sold at a trustee's sale); Wensley v. First Nat. Bank of Nevada, 874 F. Supp.
27  2d 957, 968 (D. Nev. 2012) ("In filing the Notice of Default, Defendants stated that Plaintiff was in breach
of the loan agreement due to nonpayment. Plaintiff does not dispute that she is in fact in default.  Because
28  the statement is not false, Defendants cannot be liable for slander of title.").

1
2
3

> trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust. Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust."

4
5
6
7
8
9
10
11

Id. (internal citations omitted).  "Due to the limited duties and lack of beneficial interest assigned to the trustee of a deed of trust, federal courts in California hold that TILA does not apply to the trustee of a deed of trust."  Vogan v. Wells Fargo Bank, N.A., 2:11-CV-02098-JAM, 2011 WL 5826016 at *4 (E.D. Cal. Nov. 17, 2011) (citing Guerrero v. Citi Residential Lending, Inc., No. CV F 08–1878 LJO GSA, 2009 WL 926973 at *4 (E.D. Cal. Apr.3, 2009) (holding that TILA does not apply to the trustee of a deed of trust and explaining that the limited role of such a trustee under California law precludes TILA liability)).

12
13
14
15
16
17
18
19
20
21

Plaintiff cites Vogan, 2011 WL 5826016 at *3-5, for the proposition that a trustee may nevertheless be subject to TILA in certain circumstances.  However, Vogan distinguishes between a trustee of a mortgage backed security and a trustee of a deed of trust.  Id.  At issue in Vogan was whether U.S. Bank, the trustee of a mortgage backed security, could be liable for a TILA violation.  Id.  The Vogan court found that the "trustee of a deed of trust is exempt from TILA because of its limited role under California law, but there is no analogous reason to exempt other types of trustees from TILA's provisions", such as the trustee of a mortgage backed security.  Id. at *4.  Here, Defendant Quality Loan acted as a trustee of a deed of trust and therefore is precluded from TILA liability under California law.[8]

22
23
24
25

Plaintiff thus fails to state a TILA claim against Quality Loan for which relief may be granted, and Plaintiff's TILA claim against Quality Loan is DISMISSED without prejudice.

///

26
27
28

[8]Plaintiff also relies on the theory of agency and privity as to why Quality Loan is liable for a violation of TILA, even though it served as trustee of a deed of trust.  Plaintiff cites no case law to support this theory and the Court is unaware of any authority supporting this theory or demonstrating that this theory overcomes existing law which states that TILA does not apply to the trustee of a deed of trust.

15

1

### E.     RICO

2      Next, Plaintiff alleges that Defendants "conspired together to violate 18 U.S.C.

3   § 1962(d), by committing fraud and utilizing the US Mail and the internet.  The

4   Defendants agreed upon the same criminal objective to wit:  the theft of real property

5   through illegal foreclosure liens.  Each conspirator is responsible for the action of the

6   others and the results of the conspiracy as a whole."  Compl. at 29.  Specifically, Plaintiff

7   alleges that "[b]y engaging in a pattern of racketeering activity, specifically 'mail or wire

8   fraud,' the Defendants subject to this Count participated in a criminal enterprise affecting

9   interstate commerce."  Id.

10      "To allege a violation of the mail fraud statute, it is necessary to show that (1) the

11   defendants formed a scheme or artifice to defraud; (2) the defendants used the United

12   States mails or caused a use of the United States mails in furtherance of the scheme;

13   and (3) the defendants did so with the specific intent to deceive or defraud."  Schreiber

14   Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399-1400 (9th Cir. 1986).

15      In addition, Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with

16   particularity the circumstances constituting fraud. . . ."  In alleging fraud, a complaint

17   must "specify such facts as the times, dates, places, benefits received, and other details

18   of the alleged fraudulent activity."  Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir.

19   1993); see Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.

20   1999) (citing 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and

21   Procedure: Civil § 1297, at 590 (2d ed. 1990)) (noting that in asserting a claim for fraud,

22   a complaint must allege the "time, place, and contents of the false representations, as

23   well as the identity of the person making the misrepresentation and what he obtained

24   thereby.").

25      Here, Plaintiff's Complaint contains general allegations of mail fraud, but fails to

26   satisfy the heightened pleading requirement of Rule 9(b) with respect to Defendant

27   Quality Loan.  For example, vague statements such as "Defendants were aware of the

28   misrepresentations and profited from them" do not meet Rule 9(b)'s heightened

standard.  See Compl. ¶ 118.  To survive a motion to dismiss, Plaintiff must allege facts

with respect to Defendant Quality Loan such as the times, dates, places, benefits

received, the identity of the person making the misrepresentation, and other details of

the alleged fraudulent activity.  See Neubronner, 6 F.3d at 671-72; Harrison, 176 F.3d at

784; Fed. R. Civ. P. 9(b).

Accordingly, Plaintiff's RICO claim is DISMISSED with leave to amend.

**F.    FDCPA**

Plaintiff's next claim alleges violations of the FDCPA.  The FDCPA prohibits "debt

collector[s]" from making false or misleading representations and from engaging in

various abusive and unfair practices.  15 U.S.C. § 1692.  Plaintiff alleges that

Defendants engaged in "illegal debt collection activities."  Compl. at 23.  Specifically,

Plaintiff alleged that "Defendants [including Quality Loan] . . . violated the FDCPA

because they 'regularly collects (sic) or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another.' . . . Defendants hold themselves

out to have interests in Plaintiff's Loan and Deed of Trust, yet both Assignments of the

Deed of Trust was (sic) recorded after the closing date of [the Trust] and therefore,

Deutsche Bank could not direct its attorney in fact, [Ocwen], successor in interest to

Litton Loan Servicing LLP, to make a substitute of Trustee in favor of Quality Loan

Service."  Compl. at 23.  Plaintiff also alleges that all Defendants, including Quality Loan,

are debt collectors within the meaning of the FDCPA, 15 USC § 1692.  Compl. at 23.

Defendant Quality Loan moves to dismiss Plaintiff's FDCPA claim on the

grounds that Quality Loan is not a debt collector within the meaning of the FDCPA, and

Quality Loan's act of foreclosing on a property pursuant to a deed of trust is not the

collection of a debt within the meaning of the FDCPA.

The FDCPA was enacted "to eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent

State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

1   To effectuate this purpose, the FDCPA "prohibits a 'debt collector' from making false or

2   misleading representations and from engaging in various abusive and unfair practices.

3   To be held liable for violation of the FDCPA, a defendant must—as a threshold

4   requirement—fall within the Act's definition of 'debt collector.'"  Izenberg v. ETS Servs.,

5   LLC, 589 F. Supp. 2d 1193, 1198-99 (C.D. Cal. 2008) (citing Heintz v. Jenkins, 514 U.S.

6   291, 294 (1995); Romine v. Diversified Collection Servs., 155 F.3d 1142, 1146 (9th Cir.

7   1998)).

8           Under the FDCPA, a debt collector is "any person who uses any instrumentality of

9   interstate commerce or the mails in any business the principal purpose of which is the

10  collection of any debts, or who regularly collects or attempts to collect, directly or

11  indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C.

12  § 1692a(6).  "While the Ninth Circuit has not specifically addressed whether mortgagees

13  and their assignees are 'debt collectors' under the FDCPA, courts within this Circuit,"

14  including this one, "have recognized that a debt collector does not include the

15  consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long

16  as the debt was not in default at the time it was assigned."  Brashears v. Bank of Am.

17  Home Loans, No. CV 12-6760 FMO (JCGx), 2013 WL 5741832 at *4 (C.D. Cal. Oct. 22,

18  2013) (listing numerous cases from Central, Northern, Southern, and Eastern Districts of

19  California);  Tina v. Countrywide Home Loans, Inc., 2008 WL 4790906 at *7 n.2 (S.D.

20  Cal. Oct. 30, 2008) (holding that "Countrywide is not a 'debt collector' as defined under

21  the FDCPA" because "the . . . FDCPA defines 'debt collector" as one who collects

22  consumer debts owed to another.  Countrywide's conduct was directed to collecting its

23  own debts.").

24          Accordingly, Plaintiff has failed to allege that Quality Loan is a "debt collector"

25  within the meaning of the FDCPA, and therefore has failed to state a claim for relief

26  under that statute.  Quality Loan's motion to dismiss this cause of action is therefore

27  GRANTED with leave to amend.

28  ///

1

### G.     California Civil Code 17200

Finally, Plaintiff alleges that Defendants are also liable for violations of Section 17200 of the California Business and Professions Code.  Section 17200 of the California Business and Professions Code provides a private cause of action for unlawful, unfair, and fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200.  Plaintiff admits that this claim "is sufficiently stated as a derivative cause of action and [that] Plaintiff's ability to pursue this cause of action depends on the success or failure of their substantive causes of action."  Opp'n at 18.  For example, Plaintiff states that Quality Loan's violation of TILA constitutes the necessary predicate violation for a section 17200 claim.  See Compl. ¶ 76.

Plaintiff's section 17200 claims "rise and fall with the substantive causes of action already discussed."  Tamburri v. Suntrust Mortgage, Inc., C-11-2899 EMC, 2011 WL 6294472 at *18 (N.D. Cal. Dec. 15, 2011).  As there is no longer any underlying cause of actions against Quality Loan to support Plaintiff's claim under section 17200 of the California Business and Professions Code, this cause of action is DISMISSED without prejudice.

///
///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1.      Defendant Quality Loan's Motion to Dismiss, ECF No. 7, is GRANTED with leave to amend. and

2.      Plaintiff's Request for Telephonic Appearance, ECF No. 14, is DENIED as moot.

Not later than thirty (30) days following the date this Memorandum and Order is electronically filed, Plaintiff may (but is not required to) file an amended complaint.  If no amended complaint is filed within said thirty (30) day period, without further notice to the parties, the causes of action against Quality Loan dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  January 27, 2014

_____

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT